UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

T.A.,[1]

        Plaintiff,

    v.

SSA COMMISSIONER,

        Defendant.

Case No. 25-cv-07756-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 19, 22

## I.    INTRODUCTION

Plaintiff T.A. moves for summary judgment to reverse the Social Security Administration's denial of his claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 19.  Defendant cross-moves to affirm.  ECF No. 22.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  For the reasons stated below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.[2]

## II.    PROCEDURAL HISTORY

On May 20, 2022, Plaintiff filed an application for Social Security benefits, stating a disability onset date of November 28, 2013.  Administrative Record (AR) 339-40.  Following denial at the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  AR 172, 233, 259-60.  An ALJ held a hearing on December 19, 2024 and issued an unfavorable decision on January 29, 2025.  AR 14-30, 37-70.  The Appeals

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 6, 9.

United States District Court
Northern District of California

Council denied Plaintiff's request for review on July 24, 2025.  AR 1-6.  Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

### III.   ISSUES FOR REVIEW

Plaintiff raises one argument on appeal: The ALJ failed to properly consider the opinion provided by the consultative examiner, and this case should therefore be reversed or remanded for proper consideration of this opinion.

### IV.   STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards.  *Id.*  Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up).  Under this standard, which is "not high," the Court looks to the existing administrative record and asks "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted).  If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's decision. *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up).  But "[a]

reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up).

### V. DISCUSSION

**A.    Framework for Determining Whether a Claimant Is Disabled**

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same standard for supplemental security income). The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (cleaned up). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since November 28, 2013. AR 20.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: Post Traumatic Stress Disorder (PTSD), Traumatic Brain Injury (TBI), mild neurocognitive disorder and mood disorder. AR 20.

United States District Court
Northern District of California

3

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." *Id.* § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 20.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity (RFC), defined as the most the claimant can still do despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past five years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ determined Plaintiff has the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: Can understand remember and apply simple instructions; concentration, persistence pace for simple work; He should avoid interaction with the general public, he can have occasional interaction with coworkers and supervisors; he can tolerate occasional changes to the work place. He should avoid hazards (working at unprotected heights, or with heavy or hazardous machinery) (DDS 3A/12A).

AR 22. Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work. AR 28.

United States District Court
Northern District of California

4

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles (DOT).[4] *Id.* Here, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 28-29. As such, the ALJ determined Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 28, 2013, through the date of this decision." AR 29.

**B.    Consultative Examiner**

Plaintiff argues the ALJ improperly discounted the assessment of consultative examiner psychologist Sara Bowerman, Ph.D.

**1.    Dr. Bowerman's Report**

On December 21, 2019, psychologist Sara Bowerman, Ph.D., conducted a consultative psychological evaluation of Plaintiff, then 31 years old, at the request of the Department of Social

___

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

[4] The DOT classifies jobs by their exertional and skill requirements. 20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

United States District Court
Northern District of California

United States District Court
Northern District of California

Services.  AR 637-44.  The primary source of information was Plaintiff, whom Dr. Bowerman described as a "poor historian."  AR 637.  Plaintiff reported a medical history that included low vision/blindness, hypertension, thrombocytopenia, hyperaldosteronism, chronic inflammatory bowel disease, and current dental problems.  *Id.*  He reported psychiatric conditions of posttraumatic stress disorder and obsessive-compulsive disorder, and a childhood-onset psychiatric history with extensive trauma including physical abuse by his father, school bullying, strained family relationships, and prior treatment with antidepressants and antipsychotics in late adolescence that he discontinued after a few months.  AR 637-38.

At the time of the evaluation, Plaintiff described bipolar-spectrum symptoms (mood swings from depression to irritability/anger, decreased need for sleep, hopelessness, low motivation, pressured talking, distractibility, and flight of ideas), persistent irritability and low energy, concentration difficulties, and significant interpersonal conflict at home.  AR 638.  He denied suicidal ideation but reported anxiety symptoms including restlessness, concentration difficulties, irritability, muscle tension, and excessive worry about homelessness and financial instability.  AR 638-39.  Plaintiff reported a treatment history that included brief counseling in junior high and cannabis edibles for hypertension.  AR 639.

Socially, Plaintiff lived with his mother and stepfather in Crescent City, had no children, reported no close relationships or community involvement, and described marked interpersonal difficulties and conflicts at home sometimes involving police calls.  *Id.*  He reported one arrest at age 18 related to a fight with his stepfather, with charges dropped.  AR 640.

Plaintiff completed high school.  AR 639.  He reported academic struggles in middle and high school with many failed classes.  AR 639-40.  He attempted short-term training with California Corps trying to do "computer tech stuff," but it was "hard to get."  AR 639.

Vocationally, Plaintiff worked at Walmart (2007–2009), temporary jobs, a casino job in 2012 from which he was fired during probation, and McDonald's in 2013 in a self-described management role; he last worked in 2013 and attributed cessation to medical and psychiatric conditions.  AR 640.  He reported difficulties obtaining accommodations and interpersonal conflicts.  *Id.*

For activities of daily living, Plaintiff reported a variable routine including studying, reading, and occasional yard work, with reliance on parents for transportation. *Id.* He stated he prepares simple meals and manages personal hygiene without difficulty. *Id.* Plaintiff reported being able to handle basic finances, including balancing a checkbook and paying his bills, though he was supported financially by his mother. AR 641.

Mental status examination noted adequate grooming and casual dress with poor hygiene and malodor, fair eye contact, normal gait and movements, and irritable presentation. *Id.* Speech was pressured; thought processes circumstantial; thought content pessimistic with no psychotic processes observed. *Id.* Mood was self-described as reactive to familial conflict; affect was irritable; he denied current suicidal or homicidal ideation. *Id.* He was oriented to person, place, and time; intellectual functioning appeared in the borderline range based on education and work history. *Id.* Memory, attention and concentration were markedly impaired. AR 640-41. Reasoning was concrete; insight was poor; judgment appeared good based on a practical scenario. AR 642.

Dr. Bowerman's diagnostic impressions were Bipolar I Disorder, current or most recent episode unspecified; Generalized Anxiety Disorder; and rule-outs for Unspecified Neurocognitive Disorder, Borderline Intellectual Functioning, and Unspecified Personality Disorder. AR 642-43. She also identified problems with primary support group, social environment, health, housing, occupational, and financial domains as other conditions for clinical attention. AR 643.

Functionally, Dr. Bowerman opined that Plaintiff had mild to moderate impairment in understanding, remembering, and carrying out simple one- to two-step instructions; moderate to marked impairment in understanding, remembering, and carrying out detailed but uncomplicated instructions; and marked impairment for complex or technical instructions. *Id.* She assessed marked impairment in maintaining concentration, attention, pacing, tracking, and scanning; moderate to marked impairment in responding appropriately to coworkers, supervisors, the public, usual work situations (attendance, safety, etc.), and changes in a routine work setting; and moderate to marked impairment in socially appropriate interactions, with bipolar and anxiety disorders and possible cognitive, intellectual, and personality factors contributing. AR 643-44.

Dr. Bowerman stated Plaintiff could manage his own funds.  AR 644.

### 2.    ALJ's Decision

The ALJ found Dr. Bowerman's opinion only "partially persuasive" because it "is based on a single exam, and the 'marked' end of the ranges given by assessment are not consistent with the treating sources and other records of his college coursework and his ability to live independently.  The residual functional capacity reflects the degree to which the opinion is well supported."  AR 25-26.

### 3.    Legal Standard

When determining whether a claimant is eligible for benefits, an ALJ need not take every medical opinion at "face value."  *Ford*, 950 F.3d at 1155.  "Rather, the ALJ must scrutinize the various—often conflicting—medical opinions to determine how much weight to afford each opinion."  *Cross v. O'Malley*, 89 F.4th 1211, 1213-14 (9th Cir. Jan. 5, 2024) (citing *Ford*, 950 F.3d at 1155).  For Social Security claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of the medical opinion using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c.  *See Woods v. Kijakazi*, 32 F.4th 785, 791-93 (9th Cir. 2022).  These regulations "provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinions."  *Cross*, 89 F.4th at 1214 (quoting 20 C.F.R. § 416.920c(a)).  "Instead, ALJs must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: 'supportability' and 'consistency.'"  *Id.* (quoting 20 C.F.R. § 416.920c(b)(2)).

The regulations define "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  The regulations define "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* § 416.920c(c)(2).  "An ALJ may discuss other factors, such as the medical

source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (quoting 20 C.F.R. § 416.920c(b)(2)). "Only if the ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record' must the ALJ then articulate how he or she considered these other factors." *Id.* (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)–(5)).

Under the new framework, the ALJ is no longer required to "provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods*, 32 F.4th at 787. Rather, the ALJ's decision must "simply be supported by substantial evidence." *Id*. "Even under the revised regulations, however, 'an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.'" *Cross*, 89 F.4th at 1214 (quoting *Woods*, 32 F.4th at 792).

### 4.    Discussion

Plaintiff argues the ALJ did not adequately support his reasons for finding Dr. Bowerman's opinion only partially persuasive. Mot. at 4-6.

The more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The Ninth Circuit has recognized that an ALJ may find a supported opinion unpersuasive when it is inconsistent with the record. *Woods*, 32 F.4th at 793 n.4. As summarized above, Dr. Bowerman opined Plaintiff was markedly limited in responding appropriately to coworkers, supervisors, and the public, in maintaining concentration and attention, and in pacing, tracking, and scanning. AR 643-44. Dr. Bowerman also opined Plaintiff was "moderately to markedly" limited in responding appropriately to usual work situations, dealing with changes in a routine work setting, and interacting with others in socially acceptable ways. AR 643-44. However, as the ALJ explained, the assessed marked limitations are not consistent with evidence from the treatment records and the evidence of Plaintiff's activities, which did not suggest such extensive limitations. AR 25-26.

Throughout the ALJ's decision, he discussed evidence from the treatment records that demonstrated only intermittent reports of mental symptoms, having been seen for mental health

9

treatment in 2012 and then not again until 2016, which is inconsistent with the assessed marked limitation in completing tasks, social interaction, and managing routine situations. AR 24 (citing AR 605, 614, 840, 957). The ALJ also noted that more recently, mental status examinations in the treatment records at times showed anxious, depressed, or irritable moods but also typically showed alert and oriented cognition, grossly intact memory, fair insight and judgment, and normal thought process and content. AR 24 (citing AR 1536, 1540, 1544, 1551, 1555, 1559, 1563, 1572, 1576). The ALJ also discussed Plaintiff's community college records, which showed he earned a high grade point average. AR 25 (citing AR 490). The ALJ also noted Plaintiff had been living by himself, was able to do house cleaning and dishes, prepare his own meals, and was able to navigate regular activities outside the home with some assistance, including shopping and going places by walking or using public transportation. AR 23 (citing AR 414-16). While the ALJ did not repeat these details in the paragraph addressing Dr. Bowerman's opinion, a reviewing court must consider the agency's decision as a whole, "[l]ooking to *all* the pages of the ALJ's decision," when determining whether substantial evidence supports that decision. *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (emphasis in original); *Wendt v. Kijakazi*, 2023 WL 8542737, at *2 (9th Cir. Dec. 11, 2023) ("[A]lthough the reasons were not all articulated in one place in the ALJ's opinion, we '[l]ook[ ] to *all* the pages of the ALJ's decision.'") (quoting *Kaufmann*, 32 F.4th at 851).

Moreover, Plaintiff has not challenged the ALJ's reliance on the prior administrative medical findings of the State agency psychologist at the reconsideration level, who found Plaintiff to have less extensive mental limitations than Dr. Bowerman opined. AR 27. This doctor had the benefit of reviewing the available records up to January 2023, including Dr. Bowerman's report, and concluded that the longitudinal record did not support greater mental limitation than the ALJ assessed during the relevant periods. AR 223-24, 226-29. The prior administrative medical findings provide substantial evidence supporting the ALJ's assessed residual functional capacity. *See* 20 C.F.R. §§ 404.1512a(b)(1); 416.912a(b)(1) ("State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.").

Plaintiff argues that other evidence of record, including his own subjective reports of

United States District Court
Northern District of California

United States District Court
Northern District of California

symptoms, support Dr. Bowerman's opinion. Mot. at 4. Plaintiff also argues the ALJ's reliance on college coursework ignored that he attended as a disabled student with numerous accommodations, required a caregiver to drive him and attend most classes, and experienced significant stress and ongoing difficulties with attention, concentration, and remaining for the full class period. *Id.* at 5. Plaintiff also argues the ALJ's reference to independent living failed to account for the context that his housing was provided through the Regional Center, a disability services program, and the ALJ did not explain how this undermined Dr. Bowerman's findings. *Id.* at 5-6. But Plaintiff's request would have the Court reweigh the evidence in his favor, which goes against the deferential "substantial evidence" standard of review provided in 42 U.S.C. § 405(g). Under that standard, the "key question" for the Court "is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). Thus, even though the evidence may be "susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Here, the ALJ provided substantial evidence that supports his assessment, and the Court must therefore affirm the decision.

## VI.    CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: April 10, 2026

THOMAS S. HIXSON
United States Magistrate Judge

11